MANSMANN, Circuit Judge,
concurring in part and dissenting in part.
I respectfully concur in all parts of the court’s opinion except Part IV. In Part IV, *278 I differ only with respect to defendants Demko and Gardner, which the - majority addresses in subparts B and C, respectively. I would reverse this portion of the District Court’s summary judgment and remand because, in my view, there remains a genuine issue of material fact as to each of these defendants.
I take issue with the court’s conclusion that Demko did not intend to cause Berg’s seizure. First, Demko’s state of mind at the time she processed the warrant is not clear on this record. Demko’s statement that “Berg and Bank, I’m sorry, looked very close to me,” could be read in two different ways. She could have meant that the name “Berg” looked so similar to the name “Banks” that she did not notice the wrong name was on the screen. Alternatively, she could have meant that she knew Berg’s name appeared on the screen rather than Banks’, but assumed the error was in the warrant request, not the computer system. In other words, Demko could have concluded that Gardner had intended to request a warrant for Berg, but inadvertently wrote down Banks’ name instead. Thus, Demko’s state of mind remains a jury question.
In addition, even if we assume that Demko did not notice discrepancies between the information displayed on the screen and what appeared on the information sheet at the time she typed in the data, in the aftermath of the error, her actions may well display deliberate indifference. On April 16, Gardner informed Demko that the information sheet had been processed, but there was not any warrant for Banks. She merely generated one. She did not make any effort to identify the prior incorrect warrant or to retrieve it, though she could surmise that a warrant had been generated improperly and that someone might be wrongfully arrested. Though the court finds that Dem-ko was reasonably unaware of the risk, this too is a jury question. Although Dem-ko had not expressly stated that she realized the possibility of an erroneous warrant, reckless disregard may be predicated on knowledge of facts from which an unreasonable risk of a constitutional violation may be inferred. Surely a jury could find that Demko had sufficient information to determine that she had probably generated a warrant for someone else.
At the summary judgment stage, all reasonable inferences must be drawn in favor of the non-moving party. See International Union v. Skinner Engine Co., 188 F.3d 130, 137 (3d Cir.1999) (citing Peters v. Delaware River Port. Auth., 16 F.3d 1346, 1349 (3d Cir.1994)). It would be reasonable to infer from Demko’s deposition testimony that she knew Berg’s name had come up on the computer screen while the warrant request was for Banks. Similarly, it would be reasonable to infer that as of April 16, Demko knew that an error had been made and yet did nothing to try to correct it, though someone might be wrongfully imprisoned..
As to the defendant Gardner, my disagreement with the majority stems from interpreting Gardner’s actions after he realized that the warrant he had requested for Banks had not been issued. He apparently did not make any effort to try to halt the error though he could surmise that a warrant had been generated for someone other than Banks, and that someone might be wrongfully arrested.
As the majority notes, for summary judgment purposes we may assume that Gardner realized that an erroneous warrant may have issued. The majority is satisfied, however, “that he believed there was simply no reasonable way to investigate his suspicion.” Under Farmer, 511 U.S. at 847, 114 S.Ct. 1970, Gardner might have exhibited deliberate indifference if he failed to take reasonable measures to abate a substantial risk of serious harm. When done mistakenly, being thrown into prison and deprived of one’s liberty is serious harm. Thus, the reasonableness of the measures available to Gardner in light of the relevant circumstances is a jury *279 question. Where the risk of harm is as weighty as it is in this case, greater measures might well be required to avoid it. For example, a jury could plausibly find that once Gardner realized or thought that a mistake might have occurred, he should have made even the most painstaking attempts to uncover the error and if possible, discover the identity of the individual in whose name the erroneous warrant had been issued. I thus disagree with the majority’s conclusion that Gardner neither played a part in issuing the erroneous warrant for Berg nor did he play any part in Wolfgang’s warrant. On the contrary, Gardner was “involved” in the issuance of the warrant and in Berg’s subsequent arrest. He initiated the request that resulted in the erroneous warrant, and as supervisor of the responsible agency, chose not to correct the error. Because it is feasible, if not most likely, that a jury would hold Demko and/or Gardner accountable to Berg for his wrongful imprisonment, I would reverse summary judgment for Demko and Gardner and remand the case for trial.